IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>      v.<br><br>I. LEWIS LIBBY,<br>    also known as "Scooter Libby,"<br><br>      Defendant. | Case No.   06-MS-123 (RBW) |

**REPLY MEMORANDUM IN SUPPORT OF MOTION OF
NON-PARTIES NBC NEWS AND ANDREA MITCHELL TO QUASH SUBPOENAS**

 

LEVINE SULLIVAN KOCH & SCHULZ, L.L.P.
  Lee Levine (D.C. Bar No. 343095)
1050 Seventeenth Street, N.W.
Suite 800
Washington, DC  20036
(202) 508-1100

Susan E. Weiner
National Broadcasting Company
30 Rockefeller Plaza
New York, NY  10112
(212) 664-2806

*Counsel for Non-party Movants NBC News and
Andrea Mitchell*

## TABLE OF AUTHORITIES

### CASES

*In re DaimlerChrysler AG Securities Litigation*, 216 F.R.D. 395 (E.D. Mich. 2003) ............................................................................................................ 9

*In re Grand Jury Subpoena, Judith Miller*, 438 F.3d 1141 (D.C. Cir. 2006) ................................. 3

*Hobley v. Burge*, 223 F.R.D. 499 (N.D. Ill. 2004) ........................................................................ 9

*United States v. Cherry*, 876 F. Supp. 547 (S.D.N.Y. 1995) ........................................................ 3

*United States v. Cuthbertson*, 630 F.2d 139 (3d Cir. 1980) ......................................................... 9

*United States v. Cuthbertson*, 651 F.2d 189 (3d Cir. 1981) ......................................................... 3

*United States v. Dye*, 508 F.2d 1226 (6th Cir. 1974) ................................................................... 6

*United States v. Frappier*, 807 F.2d 257 (1st Cir. 1986) ............................................................. 6

*United States v. Gomez-Gallardo*, 915 F.2d 553 (9th Cir. 1990) ................................................ 6

*United States v. Gossett*, 877 F.2d 901 (11th Cir. 1989) ............................................................. 6

*United States v. Ince*, 21 F.3d 576 (4th Cir. 1994) ...................................................................... 6

*United States v. Johnson*, 802 F.2d 1459 (D.C. Cir. 1986) ..................................................... 6, 7

*United States v. Logan*, 121 F.3d 1172 (8th Cir. 1997) ............................................................... 6

*United States v. Miller*, 664 F.2d 94 (5th Cir. 1981) ................................................................... 6

*United States v. Nixon*, 418 U.S. 683 (1974) ..................................................................... 1, 8, 10

*United States v. Peterman*, 841 F.2d 1474 (10th Cir. 1988) ................................................... 6, 7

*United States v. Poindexter*, 725 F. Supp. 13 (D.D.C. 1989) ...................................................... 3

*United States v. Roach*, 164 F.3d 403 (8th Cir. 1998) ................................................................. 3

*United States v. Sebetich*, 776 F.2d 412 (3d Cir. 1985) .............................................................. 6

*United States v. Webster*, 734 F.2d 1191 (7th Cir. 1984) ............................................................ 6

*United States v. Zackson*, 12 F.3d 1178 (2d Cir. 1993) ............................................................... 6

## STATUTES & RULES

Fed. R. Civ. P. 45 ................................................................................................................9

Fed. R. Crim. P. 16 .............................................................................................................1

Fed. R. Crim. P. 17(c) ................................................................................................*Passim*

Fed. R. Evid. 613(b) ............................................................................................................7

Non-parties NBC News ("NBC") and Andrea Mitchell respectfully submit this Reply Memorandum in support of their motion to quash the subpoenas served on them by Defendant I. Lewis Libby ("Defendant").

In this memorandum, NBC and Ms. Mitchell respond briefly to each of the specific arguments made by Defendant in support of his contention that the various categories of documents sought by his subpoenas comply with the requirements of relevancy, admissibility and specificity demanded by Federal Rule of Criminal Procedure 17(c).  *See United States v. Nixon*, 418 U.S. 683, 700 (1974).  Before turning to those specific categories, it bears emphasis that Defendant's consolidated response to these motions ("Response") nowhere addresses the Court's pronouncement concerning the scope of relevant evidence in this case announced from the bench on February 24, 2006, and memorialized in the Memorandum Opinion dated March 10, 2006.  *See* Feb. 24, 2006 Tr. at 35; Mem. Op., Mar. 10, 2006, at 1 n.3.  In that ruling, the Court resolved Defendant's analogous requests to compel the Special Counsel to produce documents and information concerning journalists pursuant to Federal Rule of Criminal Procedure 16.  The Court held that documents of the kind addressed in the Response are not relevant to the adjudication of the crimes charged in the indictment if they do not relate to communications by a journalist, prior to July 14, 2003, about the wife of former Ambassador Joseph Wilson or her employment.  *See id.*  In so holding, the Court recognized that the potential relevance of such documents – like those to which Defendant now claims to be entitled – is "too attenuated" to be "material" to the defense within the meaning of Rule 16.  Feb. 24, 2006 Tr. at 35.

Rather than confront the ramifications of that ruling for the analogous documents that Defendant now seeks pursuant to Rule 17, he chooses to ignore its plain meaning.  Like the

discovery denied by that ruling, none of the documents swept up by Defendant's subpoenas to NBC and Ms. Mitchell discuss, reference or otherwise reflect communications by them, or anyone else, about Valerie Plame Wilson (by name or otherwise) or her employment prior to July 14, 2003. Accordingly, for this overriding reason, none of the documents in their possession contain relevant evidence within the meaning of Rule 17.[1]

In addition, as we explain briefly below, Defendant's specific arguments with respect to each of the relevant categories of documents identified in the subpoenas fail to survive reasonable scrutiny:

### NBC Subpoena Category 3

> **All documents prepared at any time by Tim Russert, or by any other employee of NBC News based in any part upon information received from Tim Russert, that purport to describe any part of a telephone conversation between Tim Russert and I. Lewis Libby on July 10 and/or 11, 2003, or that reflect actions or communications by any NBC News employee during July 2003 as a result of that conversation.**

As explained in its initial memorandum, NBC possesses no documents that purport to describe any part of a telephone conversation between Defendant and Mr. Russert during which Ms. Wilson or her employment was discussed. The only non-privileged documents in NBC's possession that relate in any manner to communications between Defendant and Mr. Russert were created more than a year later and mirror the contents of statements publicly released by NBC at that time, all of which are currently available to Defendant. *See* Declaration of Lee Levine ("Levine Decl.") (filed in support of Motion to Quash) Ex. A. Such documents therefore (1) contain no information relevant to this proceeding, *see* Mem. Op., Mar. 10, 2006, at 1 n.3,

---

[1] For this reason and those set forth in their initial memorandum and in the remainder of this Reply, both subpoenas should properly be quashed in their entirety without further proceedings. As NBC and Ms. Mitchell explained in their initial memorandum, at page 9 n.3, however, should the Court deems it necessary and appropriate, they are prepared to produce *in camera* for the Court's inspection the documents in their possession that are referenced in this Reply and in their initial memorandum.

2

(2) are not themselves admissible in evidence, *see, e.g.*, *United States v. Cherry*, 876 F. Supp. 547, 552 (S.D.N.Y. 1995); *United States v. Cuthbertson*, 651 F.2d 189, 195 (3d Cir. 1981), and (3) are cumulative of information already available to Defendant in any event, *see, e.g.*, *United States v. Poindexter*, 725 F. Supp. 13, 30 (D.D.C. 1989); *United States v. Roach*, 164 F.3d 403, 412 (8th Cir. 1998).

Defendant's only response to this showing is, once again, to ignore it. He argues that he "is entitled to obtain and use at trial all evidence that shows his recollection of his July 10 or 11 conversation with Mr. Russert is correct, and that it is Mr. Russert who has misrecollected or misstated the facts." Response at 26. In that regard, he points to what he characterizes as "NBC's carefully worded public statements," which he asserts "have *never* completely disclaimed that Mr. Russert knew that Mr. Wilson's wife was employed by the CIA prior to July 14, 2003." *Id.* at 27. Based entirely on this "showing," Defendant contends that he is "clearly entitled to confront Mr. Russert with any documents that may shed light on why NBC has not declared unequivocally that Mr. Russert did not know Mr. Wilson's wife worked for the CIA when he spoke to Mr. Libby." *Id.*

Let there be no mistake: the public record, including portions of Mr. Russert's grand jury testimony that were quoted by the D.C. Circuit in a related proceeding months ago,[2] make clear

---

[2] *See* Levine Decl. Ex. A (NBC's public statements); *In re Grand Jury Subpoena, Judith Miller*, 438 F.3d 1141, 1180 (D.C. Cir. 2006) (Tatel, J., concurring in judgment) (describing and quoting Mr. Russert's sworn testimony) (citations omitted) (brackets in original):

> In his deposition, describing Plame's employment as a fact that would have been "[v]ery" significant to him – one he would have discussed with NBC management and potentially sought to broadcast – Russert stated, "I have no recollection of knowing that [Wilson's wife worked at the CIA], so it was impossible for me to have [told Libby] that." Asked to describe his "reaction" to Novak's July 14 column, Russert said, "Wow. When I read that – it was the first time I knew who Joe Wilson's wife was and that she was a CIA operative…. [I]t was news to me."

3

that Tim Russert did not know that Ambassador Wilson's wife worked for the CIA when he spoke to Mr. Libby in July 2003. Not surprisingly, therefore, *none* of the documents in NBC's possession contains a sentence, a phrase, a word, or a syllable that suggests otherwise. Accordingly, under Defendant's own theory, none of the documents at issue falls within the scope of Rule 17(c).

### NBC Subpoena Category 5; Mitchell Subpoena Category 3

> **All documents prepared at any time by Andrea Mitchell or by any other employee of NBC News that purport to discuss or explain the statement by Andrea Mitchell on CNBC's "The Capitol Report" aired October 3, 2003 . . . .**

As explained in their initial memorandum, neither NBC nor Ms. Mitchell possesses any documents arguably responsive to this request that either indicate or suggest that she, or any other NBC employee, was aware, prior to July 14, 2003, who Ambassador Wilson's wife was or that she was employed by the CIA. As a result, the Court's ruling in connection with Defendant's Rule 16 motion forecloses the possibility that any responsive document could be relevant to this case within the meaning of Rule 17.

Once again, however, Defendant ignores this reality and argues that the "fact that Ms. Mitchell may have known about Ms. Wilson's employment prior to the Novak column would be important to the defense" because it "makes it more likely that Ms. Mitchell shared this information with Mr. Russert – and that he in turn asked Mr. Libby if he knew it too." *Id.* at 28. In other words, Defendant's contention that Ms. Mitchell's testimony is somehow relevant to Defendant's case rests entirely on serial speculation – *i.e.*, *if* Ms. Mitchell knew about Ms. Wilson and her employment prior to July 11, *and if* Ms. Mitchell shared that information with Mr. Russert before he talked with Defendant, *and if* Mr. Russert then shared the same information with Defendant, *then* her testimony would "be important to the defense." *Id.*

4

No link in this chain is supported by any document in the possession of NBC or Ms. Mitchell, and Defendant's speculation is refuted by the facts. As Ms. Mitchell has publicly stated on multiple occasions, including in the exhibits submitted to the Court *by Defendant*, *see* Response Exs. U & V, she did not know that Ambassador Wilson's wife worked for the CIA prior to July 14 and did not share any such information with Mr. Russert. And, as Defendant expressly concedes, *see* Response at 29, Ms. Mitchell has repeatedly and unambiguously made this statement on the public record:

> I've gone back and talked to the people that I was working with at the time. *I know that I didn't know about the wife.* I knew that there was an envoy and we were working . . . trying to find that out. All I can figure is that I misunderstood Allen's question and screwed it up.
>
> \* \* \* \*
>
> *I know I didn't know about Joe Wilson's wife till after the column* because when the column came out I went to my producer and said . . . look at this . . . how the heck did we not know that?

Response Ex. U (quoting Ms. Mitchell) (emphasis added). *See also id.* ("I was quite surprised to hear about it [*i.e.*, subsequent press characterizations of her statement on *Capital Report*] because it isn't consistent with anything in my memory[.] I can't find any notes that reflect this alleged knowledge and so I was Mutteld [sic] on the timeline[. T]hat's all I can imagine."); *id.* Ex. V ("The fact is that I did not know before the Novak column cause I had interviewed Joe Wilson several times on Meet The Press and in none of those interviews did any of this come up on or off camera.").

Under these circumstances, Defendant's suggestion that he is entitled to the documents at issue because he "will likely call Ms. Mitchell as a witness" and will "ask her about the meaning of her October 3, 2003 statement" on *Capital Report*, Response at 28, makes no logical sense. Because Ms. Mitchell would testify that she did not know that Ms. Wilson worked for the CIA

5

prior to July 14, Defendant's only possible evidentiary use of this statement would be to attempt to impeach her testimony. However, it is well settled that Defendant may not properly call a witness he knows will not provide testimony helpful to his case, so that he may then evade the requirements of the hearsay rule and put before the jury what he claims to be a prior inconsistent statement by that witness. Such "subterfuge" is a long established "abuse" of the Federal Rules of Evidence, and is strictly prohibited in the federal courts. *See United States v. Webster*, 734 F.2d 1191, 1192 (7th Cir. 1984) (Posner, J.).[3]

In this Circuit, that prohibition is set forth plainly in *United States v. Johnson*, 802 F.2d 1459 (D.C. Cir. 1986). There, a store-owner was prosecuted for possession of cocaine with intent to distribute. To rebut his defense, the prosecution called one Halmon, who had been arrested for cocaine possession two weeks before Johnson. *See id.* at 1463. Halmon gave a signed statement to police at that time that he had been selling cocaine for Johnson. *See id.* In a hearing outside of the jury's presence, Halmon acknowledged that he had made the statement, but said that it was untrue. *See id.* Nevertheless, at trial, the prosecution called Halmon and, when he refused to implicate Johnson, published to the jury Halmon's post-arrest statement. *See id.* The Court of Appeals roundly condemned this tactic:

> [I]t was entirely inappropriate for the prosecution to call Halmon to the stand when it well knew that his live testimony, unlike his prior statement, would be favorable to the defendant. It is reasonable to conclude that the prosecution called Halmon not for any testimony he could be expected to give, but for the sole purpose of bringing about the admission of a post-arrest statement that, as the

---

[3] *See also United States v. Frappier*, 807 F.2d 257, 259 (1st Cir. 1986); *United States v. Zackson*, 12 F.3d 1178, 1184-85 (2d Cir. 1993); *United States v. Sebetich*, 776 F.2d 412, 428-29 (3d Cir. 1985); *United States v. Ince*, 21 F.3d 576, 579-81 (4th Cir. 1994); *United States v. Miller*, 664 F.2d 94, 97 (5th Cir. 1981); *United States v. Dye*, 508 F.2d 1226, 1234 (6th Cir. 1974); *United States v. Logan*, 121 F.3d 1172, 1174-75 (8th Cir. 1997); *United States v. Gomez-Gallardo*, 915 F.2d 553, 555 (9th Cir. 1990); *United States v. Peterman*, 841 F.2d 1474, 1479-80 (10th Cir. 1988); *United States v. Gossett*, 877 F.2d 901, 907 (11th Cir. 1989).

6

> prosecution well knew or should have known, was not independently admissible. This conduct was improper.

*Id.* at 1466.

As the D.C. Circuit emphasized in *Johnson*, "[t]here is no authority, in the Federal Rules of Evidence or elsewhere," that permits a party to call a witness "who the party knows will not offer any relevant evidence – and then impeach that witness by introducing, under Fed. R. Evid. 613(b), an earlier, hearsay statement favorable to that party's case." *Id.* In fact, "the case law is to the contrary. Impeachment evidence is to be used solely for the purpose of impeachment, and it may not be 'employed as a mere subterfuge to get before to jury evidence not otherwise admissible.'" *Id.* (citing *Webster*, 734 F.2d at 1192). Such "bootstrapping" is entirely "impermissible." *Id.*

Defendant is therefore mistaken when he asserts that he can employ such a tactic in this case by calling Ms. Mitchell as a witness at trial and then attempting to "impeach" her testimony by reference to the statements she made on *Capital Report*.[4] He ranges even further afield when he asserts that he would then be permitted to impeach that testimony through the documents at issue, *none* of which suggests that she knew, prior to July 14, 2003, who Ms. Wilson was, much less her place of employment. There is simply no proper evidentiary use to which those documents could be put at trial and, for this reason as well, their production cannot be compelled pursuant to Rule 17(c).

---

[4] In addition, as Defendant concedes, courts will not entertain requests for even properly admissible "impeachment material in advance of trial" unless it relates to a "person who is *almost certain* to be a witness at trial." Response at 16 (emphasis added). Defendant effectively concedes that Ms. Mitchell does not fall within this category and, as we demonstrate *supra*, the law in fact prohibits him from calling her for the only purpose he is even contemplating doing so. *See id.* at 28 (suggesting only that Defendant will "*likely* call Ms. Mitchell as a witness and ask her about the meaning of her October 3, 2003 statement") (emphasis added).

**NBC Subpoena Category 6; Mitchell Subpoena Category 4**

> **All documents reflecting communications by any employee of NBC News concerning former Ambassador Joseph Wilson prior to July 14, 2003, with any of the following persons: Ari Fleischer, Mark Grossman, Eric Edelman, Bob Grenier, Cathy Martin, Joseph Wilson, George Tenet and Bill Harlow.**

Defendant's arguments in support of his request for documents "reflecting communications by *any* employee of NBC News" about Ambassador Wilson with eight different persons are especially curious. Here, Defendant argues neither that such documents will show that Mr. Russert, Ms. Mitchell or any other NBC employee knew Ms. Wilson's identity or employment prior to July 14, 2003, nor even that they had any relevant communications with Defendant during this period. Indeed, Defendant could not advance that argument because NBC and Ms. Mitchell have already made plain that they have no documents falling within this category that relate either to Ms. Wilson or her employment. Rather, Defendant claims that he is entitled to documents in this category "to show that administration officials . . . saw Ms. Wilson's employment as a point unworthy of mention in connection with Mr. Wilson's story," which in turn purportedly "makes it more likely that Mr. Libby saw Ms. Wilson's CIA affiliation as a sidelight as well." Response at 18-19. This tortured reasoning cannot satisfy the relevance requirements of Rule 17(c). Defendant further speculates, apparently based on nothing more than conjecture that each of these eight persons likely spoke to some NBC reporter, that documents "responsive to this request may also be used to impeach" their testimony at trial. Response at 19. If this is not the kind of "general 'fishing expedition'" specifically condemned by the Supreme Court in *Nixon*, 418 U.S. at 699-700, it is difficult to imagine what is.

The very breadth of this category, coupled with the painfully thin "showing" that Defendant has now made in support of it, reinforces the conclusion that enforcement of this portion of the subpoenas would be "unreasonable or oppressive" for purposes of Rule 17(c).

8

Where, as here, the documents sought bear no relevance to the crimes with which the Defendant has been charged, this Court should be especially reluctant to require a news organization and one of its journalists to divulge the content of their communications with a host of news sources about entirely unrelated subjects. *See, e.g.*, *United States v. Cuthbertson*, 630 F.2d 139, 146 (3d Cir. 1980) (quashing Rule 17(c) subpoena issued to television network where it constituted "a broad request for material . . . on a very slight showing of the evidentiary nature of the material sought"). *Cf. Hobley v. Burge*, 223 F.R.D. 499, 504-05 (N.D. Ill. 2004) (quashing civil subpoenas seeking journalistic work product pursuant to Fed. R. Civ. P. 45 where enforcement "would impose an undue burden" on a reporter by disclosing it); *In re DaimlerChrysler AG Sec. Litig.*, 216 F.R.D. 395, 403 (E.D. Mich. 2003) (same).

### Mitchell Subpoena Category 5

**All documents reflecting or referring to any conversation between you and I. Lewis Libby during the period July 6, 2003 to October 3, 2003.**

As explained in her initial memorandum, Ms. Mitchell has one document that arguably falls within this category in her possession, *i.e.*, handwritten notes of what could be a single conversation she had with Defendant within the specified time frame. That document, however, contains no information of any kind relating either to Ms. Wilson or to her employment. It is therefore surprising that, after devoting the lion's share of his Response to the contention that his quest for documents from NBC and Ms. Mitchell springs from his theory that they might contain evidence that Ms. Mitchell knew Ms. Wilson's identity and employment prior to July 14 (which Defendant speculates was then passed on to Mr. Russert), Defendant abruptly reverses course and argues instead that "[t]he fact that Mr. Libby talked to Ms. Mitchell during the time relevant to the indictment and *did not* mention that Mr. Wilson's wife worked for the CIA has obvious relevance to this case." Response at 30 (emphasis in original).

9

Apparently, according to Defendant's "logic," the fact that a single page from a reporter's notebook contains no information about Ms. Wilson or her employment somehow constitutes probative evidence that he was not engaged in a "'vigorous effort' to discredit Mr. Wilson by telling reporters about his wife's employment." *Id.* With all due respect, it is Defendant's contention that "defies common sense." *Id.* As demonstrated *supra*, Ms. Mitchell has publicly and specifically explained that she did not learn Ms. Wilson's identity or her employment – from *any* source – prior to July 14, 2003. *See* pages 4-5 *supra*. Indeed, to our knowledge, the only party to this case who has ever contended otherwise is Defendant. Thus, for him now to maintain that he requires access to Ms. Mitchell's handwritten notes to demonstrate that Defendant did *not* impart such information to her is more than a tad puzzling. If anything, Defendant's sudden "about face" and multiplicity of theories demonstrate that he is engaged in the kind of "general 'fishing expedition'" that has been specifically condemned by the Supreme Court. *Nixon*, 418 U.S. at 699-700 (citation omitted).

In addition, the notion that a single page of handwritten notes constitutes probative evidence that two people never discussed a specific subject prior to a certain date would lead to limitless discovery in this case. Under Defendant's theory, he would be entitled to subpoena the notes of every reporter with whom he may have talked during the relevant period, ostensibly to show that he did not tell them about Ms. Wilson either. It cannot reasonably be suggested that Rule 17(c) authorizes Defendant to rummage through *their* notebooks and, for this purpose, Ms. Mitchell is no different than any such reporter (apparently other than Ms. Miller and Mr. Cooper) who did not learn Ms. Wilson's identity and employment from Defendant. Accordingly, there is no credible argument that these notes satisfy the requirements of Rule 17(c).

## **CONCLUSION**

For all of the foregoing reasons, and those set forth in their initial memorandum of points and authorities, Non-Party Movants NBC News and Andrea Mitchell respectfully request that the subpoenas issued to them by Defendant be quashed.

Dated:   May 8, 2006                         Respectfully submitted,


LEVINE SULLIVAN KOCH & SCHULZ, L.L.P.


By:  /s/ Lee Levine
      Lee Levine (D.C. Bar No. 343095)
1050 Seventeenth Street, N.W.
Suite 800
Washington, DC  20036
(202) 508-1100

Susan E. Weiner
National Broadcasting Company
30 Rockefeller Plaza
New York, NY  10112
(212) 664-2806

*Counsel for Non-party Movants NBC News and Andrea Mitchell*

11

**CERTIFICATE OF SERVICE**

      I hereby certify that on May 8, 2006, I caused a true and correct electronic copy of the foregoing Reply Memorandum in Support of Motion of Non-Parties NBC News and Andrea Mitchell to Quash Subpoenas to be served by the Court's Electronic Case Filing System upon all parties scheduled for electronic notice.

                                              /s/ Adam J. Rappaport
                                              Adam J. Rappaport